UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

STEVEN JOHN HECKE,

Plaintiff,

v.                                    CAUSE NO. 1:23-CV-286-GSL-SLC

RICHARD BECK and DAVID
GLADIEUX,

Defendants.

<u>OPINION AND ORDER</u>

Steven John Hecke, a prisoner without a lawyer, filed a complaint that contained unrelated claims. ECF 1. After he refused to narrow his complaint to only related claims, the court chose for him and limited his case to claims related to the overcrowding he experienced at the Allen County Jail as a federal pretrial detainee from January 13, 2020, through April 19, 2022, based on the class action, *Morris v. Sheriff of Allen County*, No. 1:20-CV-34-DRL, 2022 WL 971098, at *1 (N.D. Ind. Mar. 31, 2022). ECF 17. Hecke was instructed to file an amended complaint that limited the claims to just those involving the overcrowding. *Id.* When he chose to stand on his complaint, the court dismissed the complaint for failure to state a claim. ECF 19. On appeal, the Seventh Circuit agreed that the complaint contained unrelated claims, but remanded the case because the complaint did state a claim based on the alleged overcrowding:

> Here, Hecke's complaint describes multiple harmful conditions that make it plausible that he was subjected to objectively unreasonable conditions caused by the overcrowding at the jail. These include: being forced to sleep on the floor with a back injury, exposure to human waste from nonfunctioning toilets for ten to twelve hours at a time, lack of access to water, and exposure to smoke from

fires started with contraband devices. Depending on the frequency or duration of the conditions, any of them could be objectively unreasonable.

*Hecke v. Beck*, No. 24-2909, 2024 WL 5165598, at *3 (7th Cir. Dec. 19, 2024).

Hecke has now filed an amended complaint against 37 defendants, purporting to have narrowed the claims only to those involving overcrowding.[1] ECF 29. The court's job now is to determine whether those claims are, in fact, related to the overcrowding and whether he has alleged sufficient "frequency or duration of the conditions" such that he has plausibly alleged an injury. *Id.* "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Hecke was a federal pretrial detainee who was held at the Allen County Jail from January 13, 2020, through April 19, 2022, when he was moved to a different facility due to unconstitutional conditions at the Allen County Jail. He is a member of the class in

---

[1] In the amended complaint Hecke refers back to allegations in his original complaint (ECF 1 and ECF 1-1). The local rules prohibit him from amending his complaint in a piecemeal fashion. Northern District of Indiana Local Rule 15-1 requires that an amended complaint "reproduce the entire pleading as amended" and prohibits "incorporat[ing] any prior pleading by reference." An amended complaint will supersede all earlier pleadings and control the case from that point forward. *French v. Wachovia Bank*, 574 F.3d 830, 835 (7th Cir. 2009). All the relevant allegations should be contained in one document, so references to the original complaint are disregarded.

The court will, however, carry over the relevant exhibits from the original complaint. Hecke refers to the exhibits located at ECF 1-3 when discussing lockdowns and fires (the "Lockdown/Fire Exhibits") and to the exhibits located at ECF 1-4 when discussing his medical issues (the "Medical Exhibits"). Those exhibits will be attached to the amended complaint and become part of it.

*Morris v. Sheriff of Allen County*, No. 1:20-CV-34-DRL, 2022 WL 971098, at *1 (N.D. Ind. Mar. 31, 2022), which defined the class as "all persons currently confined, or who would in the future be confined, in the Allen County Jail." That class action was certified under Federal Rule of Civil Procedure 23(b)(2) for injunctive and declaratory relief, and the court found that certain conditions of confinement at the jail violated the Eighth and Fourteenth Amendments to the Constitution: "The overcrowding problem at the jail—which in turn has spawned an increased risk of violence, unsanitary and dangerous conditions in cells, insufficient recreation, and classification difficulties—has deprived this class of inmates 'the minimal civilized measure of life's necessities.'" *Id.* at *1, *5 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

Thus, it is undisputed that Hecke was held in unconditional conditions of confinement. However, to recover damages, as he seeks here, he needs to identify a compensable injury that stemmed from the unconstitutional conditions identified in *Morris* or provide another basis for liability. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). *See generally Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir. 1982) (discussing the effect of a class action for injunctive and declaratory relief on a later suit for damages); *see also Williams v. Lane*, 129 F.R.D. 636, 643–49 (N.D. Ill. 1990) (reviewing caselaw and concluding a class action limited to declaratory and injunctive relief may provide the basis for liability on damages claims, though the amount of damages incurred must be individually determined).

*Morris* involved a claim against the Allen County Sheriff in his official capacity and against Allen County. These entities' differing responsibilities towards the jail's occupants are defined by Indiana law:

> [T]he statutory duties of a county and a sheriff, respectively, are set forth as follows: "The executive shall establish and maintain a . . . county jail . . .." Ind. Code § 36-2-2-24. "The sheriff shall . . . take care of the county jail and the prisoners there." Ind. Code § 36-2-13-5(a)(7). We concluded that a county's duty to "maintain" its jail is a duty to keep the jail open for use and in good repair. The statute does not impose a duty upon a county to administer its jail.

*Donahue v. St. Joseph Cnty. ex rel. Bd. of Com'rs of St. Joseph Cnty.*, 720 N.E.2d 1236, 1240 (Ind. Ct. App. 1999) (ellipses in original, citation omitted). In *Morris*, the court concluded that Allen County had violated the Eighth and Fourteenth Amendments because "the existing physical structure of the Allen County Jail prevents the Allen County Sheriff from discharging his duty to care properly for the prisoners housed there." 2022 WL 971098 at ¶ 124. Particularly, the building "is much too small for the criminal justice needs of Allen County," *Id.* at ¶ 101, and the portion of the jail where Hecke was housed "is showing its age, with rotting and bursting pipes and sewer backups." *Id.* at ¶ 104. As to the Sheriff's responsibilities, the court found that the jail was understaffed, and the lack of adequate staffing caused "daily deficiencies in controlling inmate behavior; daily deficiencies in observing prisoners; daily deficiencies in handling emergency backup; daily deficiencies in regulating prisoner movement; daily problems in controlling inmate contraband; daily deficiencies in providing recreation; continuous problems in providing adequate backup for staff; and monthly problems in providing staff training." *Id.* at ¶ 65.

Hecke first sues Sheriff David Gladieux, Jail Commander David Butler, and Allen County Commissioner Richard Beck under *Monell* for damages stemming from the unconstitutional conditions. It is redundant to sue both Sheriff Gladieux and Commander Butler under *Monell* because a *Monell* claim is an official capacity suit, and "a suit against a governmental officer in his official capacity is the same as a suit against the entity of which the officer is an agent." *McMillian v. Monroe Cnty.*, 520 U.S. 781, 785 n.2 (1997) (quotation marks and brackets omitted). Both Commander Butler and Sheriff Gladieux are agents of the Sheriff's Department. Commander Butler will be dismissed from the *Monell* claim.

To state a claim for damages against Sheriff Gladieux or Commissioner Beck in their official capacities, Hecke must plausibly allege that he was injured and that the unconstitutional conditions identified in *Morris* were the "moving force" behind his injuries. *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235-36 (7th Cir. 2021) ("[A] *Monell* plaintiff must show that some municipal action directly caused him to suffer a deprivation of a federal right, and that the municipality took the action with conscious disregard for the known or obvious risk of the deprivation."). In other words, Hecke must link the complained-of conditions in the amended complaint to the *Morris* findings and explain how he was personally affected by the conditions because a necessary element of a constitutional tort is "that the officer's act . . . caused any injury." *Whitlock v. Brueggemann*, 682 F.3d 567, 582 (7th Cir. 2012); *see also Jackson v. Pollion*, 733 F.3d 786, 790 (7th Cir. 2013) ("[T]here is no tort—common law, statutory, or constitutional—without an injury, actual or at least probabilistic."). If he seeks damages

against an individual defendant, he cannot use the findings in *Morris* to support that claim, as the individual defendants were not parties to the previous proceeding. *See Universal Guar. Life Ins. Co. v. Coughlin*, 481 F.3d 458, 462 (7th Cir. 2007) (noting that one required element for a ruling to have collateral estoppel effect, preventing it from being relitigated again, is that "the party against whom estoppel is invoked must be fully represented in the prior action").

Overcrowding, on its own, does not state a constitutional claim, and instead the court must look to the effects the overcrowding has on the conditions of confinement experienced by Hecke. *See Bell v. Wolfish*, 441 U.S. 520, 542 (1979) ("While confining a given number of people in a given amount of space in such a manner as to cause them to endure genuine privations and hardship over an extended period of time might raise serious questions under the Due Process Clause as to whether those conditions amounted to punishment, nothing even approaching such hardship is shown by this record."). As a pretrial detainee, Hecke is protected under the Fourteenth Amendment from being held in "conditions that 'amount to punishment.'" *Mulvania v. Sheriff of Rock Island Cnty.*, 850 F.3d 849, 856 (7th Cir. 2017) (quoting *Bell*, 441 U.S. at 535). Conditions may amount to punishment if as a result, inmates are denied "the minimal civilized measure of life's necessities," which include "reasonably adequate ventilation, sanitation, bedding, hygienic materials, and utilities," *Hardeman v. Curran*, 933 F.3d 816, 820 (7th Cir. 2019) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981) and *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016)), as well as constitutionally adequate medical care, *Miranda v. Cnty. of Lake*, 900 F.3d 335, 353-54 (7th Cir. 2018). A harmful condition

can be punishment if the condition was "imposed for the purpose of punishment, . . . is not reasonably related to a legitimate goal . . ., or is excessive in relation to that purpose." *Mulvania*, 850 F.3d at 856 (quoting *Bell*, 441 U.S. at 538-39 and *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015)).

The court will first look at whether Hecke has plausibly alleged that the conditions identified in *Morris* were the moving force behind his purported injuries in order to proceed against Sheriff Gladieux or Commissioner Beck in their official capacities. Then, the court will consider whether Hecke states a claim against any of the named individual Allen County Jail employees. Finally, the court will consider whether Hecke may proceed against the United States Marshals who were involved in his placement while he was a federal pretrial detainee.

## I. *MONELL* CLAIMS

### A. Medical Care

Hecke first alleges that he received constitutionally inadequate medical care for a neck injury because the understaffing meant that correctional officers were overtaxed and frequently forgot to bring him the ice pack ordered by the jail's physician. Hecke explains that he sustained a spine injury during his arrest on January 13, 2020. ECF 29 at 26. This resulted in a loss of mobility in his neck and left arm, and he experienced severe to moderate pain during his confinement at the Allen County Jail.[2] *Id.* at 27.

---

[2] Hecke's treatment for this injury at the Allen County Jail included outside medical consultations and an MRI. ECF 29 at 27.  He was diagnosed with Active left C7 radiculopathy and with severe cervical spine abnormalities. *Id.*

From January 22-28, 2020, and from March 3, 2020, through June 30, 2021, the Allen County Jail physician prescribed him an ice treatment to help alleviate pain and swelling. *Id.* at 27-28. Correctional officers were supposed to deliver his ice pack each day, but the ice was frequently forgotten even when Hecke would specifically ask for it. Hecke attributes this oversight to the officers being so busy with the many tasks given to them, his ice treatment fell to the bottom of their priorities. *Id.* at 28-29. He complains that the failure of these officers to provide him with ice caused increased and lingering pain and swelling in his cervical spine injury. *Id.* at 30. Hecke plausibly alleges that the understaffing at the Allen County Jail led to objectionably unreasonable medical care with the repeated denial of his ice treatment, and so he may proceed against Sheriff Gladieux in his official capacity on this claim. There is no connection to the physical structure of the jail, implicating Commissioner Beck.

## B. Sleeping on the Floor

Next, Hecke complains that because of the overcrowding, he had to sleep on the floor from June 2020 through June 2021. ECF 29 at 31. He alleges that sleeping on a concrete floor for a year increased the pain associated with his cervical spine injury. *Id.* at 32. However, the allegations do not suggest that sleeping on the floor amounts to an objectively unreasonable condition. Hecke admits that he had a mat, and sleeping on a mat on the floor, rather than on an elevated bed, does not, by itself, constitute a constitutional violation. *See Randle v. Gladieux,* No. 1-21-CV-425-HAB-SLC, 2022 U.S. Dist. LEXIS 26855 at *3-4 (N.D. Ind. Feb 15, 2022) ("[S]leeping on a mat on the floor, while uncomfortable, does not deprive a person of the minimal civilized measure of

8

life's necessities."); *Rodmaker v. Krienhop*, No. 4:14-CV-070-TWP-TAB, 2014 U.S. Dist. LEXIS 100067 at *6 (S.D. Ind. July 23, 2014) ("[S]leeping on the floor does not punish a detainee so long as jail officials provide a mattress.").

Hecke complains that the mat was deficient, but there are no allegations that his mat was different from the mats used by the inmates on elevated beds. ECF 29 at 32. Nor does he explain how the elevated beds provided a better sleeping surface than the floor. *See Roop v. Squadrito*, 70 F. Supp. 2d 868, 874 (N.D. Ind. 1999) (noting "the bunk the Plaintiff aspired to in the Allen County Jail is nothing more than a suspended steel platform, and this can hardly be characterized as any great improvement over a concrete floor" (quoting *Thomas v. Squadrito,* 98–CV–240, slip op. p. 12 (N.D. Ind. August 6, 1999)).

### C. Smoke Inhalation

Next, Hecke claims that he was subjected to smoke inhalation from fires at the Allen County Jail that occurred because the ventilation system was coated with debris that presented an obvious fire hazard and because staff were too busy to search for contraband that other inmates used to set the fires. ECF 29 at 33-35. *Morris* includes the findings that the understaffing resulted in "daily problems in controlling inmate contraband" and "insufficient staffing in the jail to respond to emergencies." 2022 WL 971098, at ¶ 65, ¶ 80. The court will assume at the pleading stage that the overcrowding and understaffing contributed to these fires, but Hecke hasn't plausibly alleged that he was injured by the fires.

The first fire Heck describes occurred in the ventilation system on July 21, 2020. ECF 29 at 38. He says that black smoke billowed from the ventilation system. *Id.* His cell block was locked down, and he remained in his smoke-filled cell for three hours, using a t-shirt as a mask. *Id.* He alleges the smoke was so dense that his eyes watered and burned, and he had difficulty breathing. *Id.* There was a similar fire, he says, the next month on August 12, 2020. *Id.* at 39. After this, the jail enacted a policy for future fires. In the event of a fire, the inmates in the affected blocks would be removed from the cell block, and jail staff would use industrial fans to ventilate the cell block. *Id.* Nursing staff, meanwhile, would conduct medical checks on each inmate. *Id.*

Hecke's allegations regarding the fires do not describe a cognizable injury. Hecke alleges that he suffered smoke inhalation on a "routine basis," while detained in A-Block, but he does not provide facts to support that allegation. ECF 29 at 37. *See Dix v. Edelman Fin. Servs., LLC*, 978 F.3d 507, 513 (7th Cir. 2020) (noting that "conclusory allegations [in a complaint] are not entitled to this presumption of truth."). In the year Hecke was held in A-Block, from May 2020 through June 2021, he identifies one fire in July 2020, one fire in August 2020, and then three fires in December 2020. *Id.* at 37-39. This sequence of events does not allow a reasonable inference that he suffered smoke inhalation on a "routine basis." Furthermore, he alleges that he had temporary discomfort from the smoke, but he does not allege any ongoing effects from the smoke exposure. *Cf. Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999) (concluding "breathing problems, chest pains, dizziness, sinus problems, headaches and a loss of energy" due to exposure to second-hand smoke were, "objectively speaking, relatively

minor" and, as a matter of law, did not reach the level of an objectively serious injury under the Eighth Amendment).

### D. Water Supply

Next, Hecke complains about issues with the water supply at the Allen County Jail. He alleges that the building's structure was inadequate, resulting in periods where he was exposed to nonfunctioning toilets and had to go without drinking water for a "considerable amount of time." ECF 29 at 44-45. He alleges he suffered nausea, headaches, and dehydration as a result of the lack of water. *Id.* at 45. He cites to the finding in *Morris*, that the oldest portion of the jail, built forty years ago and where he was housed, "is showing its age, with rotting and bursting pipes and sewer backups." 2022 WL 971098 at ¶ 104.

Hecke does not plausibly allege that he was injured by water problems at the jail. He lists several instances in which the water was cut off, and explicitly states that there were more he does not mention. But the ones he does mention do not allow a reasonable inference that he ever experienced a constitutional injury from the water problems. For example, he alleges that the water was cut off for just an hour on July 21, 2020, at breakfast time. ECF 29 at 47. The next incident occurred the following month on August 16, 2020, and the water was cut off from 2:00 a.m. to 9:15 a.m. *Id.* The next month, Hecke describes a four-hour shutdown on September 19, 2020, from about 6:05 a.m. to 9:50 a.m. ECF 29 at 47. Then, two months later, the water was shut down for three hours on December 3, 2020, from 2:30 p.m. to 5:35 p.m. *Id.* Hecke does not report any other instances for the next thirteen months, until January 23, 2022, when the water

was cut off for almost 12 hours from 12:30 a.m. to 10:00 a.m., and again on January 26,

2022, when Hecke's cell block was locked down for water-related maintenance issues.

*Id.* Then, Hecke alleges that a month later the water was cut off during a punitive

lockdown on February 28, 2022, for seven hours. *Id.* at 48.

The court acknowledges that this is not an exhaustive list of the water shutdowns

Hecke experienced at the jail. But based on the sporadic, short-term shutdowns listed, it

is not reasonable to infer that Hecke was injured or otherwise denied the minimal

civilized measure of life's necessities by these shutdowns. Most of the shutdowns lasted

just a few hours and occurred weeks or months apart. The longest shutdown identified

was twelve hours, largely when the inmates were asleep, lessening the effect on the

inmates. Hecke cites to *Hardeman v. Curran*, 933 F.3d 816, 819 (7th Cir. 2019), where a

three-day water shutdown led to a buildup of feces in hundreds of unflushed toilets

over those three days, attracting insects and producing a "powerful and putrid smell."

However, he does not describe any specific experience with unflushed toilets, alleging

only that he was "subject to frequent water outages that exposed [him] to human

waste." ECF 29 at 48. This vague allegation in conjunction with the sporadic and mostly

short-term shutdowns identified do not come close to approaching the conditions

during the three-day shutdown in *Hardeman* or otherwise allow a reasonable inference

that the sanitation level fell to an uncivilized level. Hecke has not plausibly alleged that

he suffered any injury as a result of the water issues at the jail.

### E. Lockdowns

Next, Hecke complains that because of the overcrowding and understaffing, jail staff resorted to lockdowns in order to maintain security, which kept him confined in an overcrowded cell. ECF 29 at 50. He alleges that jail staff would lock down the entire block because of individual infractions, such as two inmates fighting, possession of contraband by other inmates, or inmates failing to properly line up for meal pass. *Id.* at 50-51. He says these lockdowns lasted from days to weeks at a time and would occur at least once a month, and sometimes weekly. *Id.* at 51. Giving him the inferences to which he is entitled at this stage, Hecke has plausibly alleged that the overcrowding and understaffing led to an overuse of lockdowns to maintain security, forcing him to be locked in an already overcrowded cell without enough space to exercise or move around. He may proceed against Sheriff Gladieux and Commissioner Beck in their official capacities on this claim.

### F. Restroom Access

Finally, Hecke complains that the lack of staff led to unreasonable restrictions on restroom access, which resulted in him defecating on himself on June 29, 2021. ECF 29 at 54. Hecke alleges that on June 29, he was suffering from gastrointestinal distress and told several officers he urgently needed to use the restroom. *Id.* at 57. He was not allowed access and soiled himself. *Id.*

Hecke, however, does not describe the purported unreasonable restrictions on restroom access. He simply refers to 210 IAC 3-1-7(a)(5), which directs that a jail shall have at least one toilet per twelve inmates, which is satisfied if cells are accessible to

inmates all the time. Hecke needs more than a violation of state policy to state a constitutional claim. *See Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) ("However, 42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or, in this case, departmental regulations and police practices."). He provides no facts about the policy that would allow the court to infer that the overcrowding and understaffing led to unconstitutionally impermissible restrictions on restroom access. A complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[A] plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) (emphasis in original). This does not provide a basis for damages.

### G. Conclusion

Hecke may proceed against Sheriff Gladieux in his official capacity to receive damages for being held in unconstitutionally overcrowded and understaffed conditions, as identified in *Morris*, resulting in a denial of ice treatment for an injury in violation of the Fourteenth Amendment. Hecke may proceed against Sheriff Gladieux and Commissioner Beck in their official capacities to receive damages for being held in unconstitutionally overcrowded and understaffed conditions in a building that is too small, as identified in *Morris*, resulting in the overuse of lockdowns, keeping him unreasonably confined in a small space without enough room to exercise or move around in, in violation of the Fourteenth Amendment.

## II. INDIVIDUAL CAPACITY CLAIMS

### A. Medical Claims

Hecke sues seventeen correctional officers,[3] who he alleges did not bring him ice as prescribed by a doctor. Hecke is entitled to constitutionally adequate medical care for his serious medical needs, which requires jail staff to take "reasonable available measures" to address a "risk of serious harm" to an inmate's health or safety. *Pittman v. Madison Cnty.*, 108 F.4th 561, 572 (7th Cir. 2024). Whether a defendant is providing reasonable care is determined by a purely objective standard. *Id.* First, the plaintiff must allege the defendant performed a volitional act or made a deliberate choice not to act. *Id.* at 570. "This framing asks strictly whether the defendant intended to commit the physical act that caused the alleged injury." *Id.* "[L]iability for *negligently* inflicted harm is categorically beneath the threshold of constitutional due process." *Kingsley v. Hendrickson*, 576 U.S. 389, 396 (2015) (quotation marks omitted). Then, the reasonableness of that action or inaction is assessed based on whether "reasonable [individuals] under the circumstances would have understood the high degree of risk involved, making the consequences of the defendants' conduct obvious." *Pittman*, 108 F.4th at 572 (emphasis omitted). Whether the defendant actually knew that his action or inaction would cause harm is irrelevant under the Fourteenth Amendment. *Id.* "[W]hen

---

[3] The defendants on this claim are (1) Correctional Officer Baldwin, (2) Correctional Officer King, (3) Correctional Officer Birgette, (4) Correctional Officer Schram, (5) Correctional Officer Betty, (6) Correctional Officer Gore, (7) Correctional Officer Fries, (8) Correctional Officer Wright, (9) Correctional Officer Toledo, (10) Correctional Officer Lemons, (11) Correctional Officer Finely, (12) Correctional Officer Arnold, (13) Correctional Officer Brenneman, (14) Correctional Officer Adams, (15) Correctional Officer England, (16) Correctional Officer Rhinehart, and (17) Correctional Officer Goodman. ECF 29 at 25-26.

evaluating whether challenged conduct is objectively unreasonable, courts must focus on the totality of facts and circumstances." *Mays v. Dart*, 974 F.3d 810, 819 (7th Cir. 2020) (quotation marks omitted).

Hecke is proceeding on a claim regarding his ice treatment against the Sheriff in his official capacity because the overcrowding and understaffing plausibly led to the individual officers being too overtasked to consistently bring Hecke an ice pack every day. However, the facts supporting the official capacity claim undermine the individual liability of the officers. When looking at the objective reasonableness of the individual officers' actions, it is not unreasonable for other tasks assigned to the officers to take precedence over retrieving Hecke's ice packs. Although the jail *should* have been adequately staffed, it was not, and the Sheriff will be held accountable for any proven violations stemming from that failure. But in the absence of individual allegations of unreasonable behavior on the part of an individual officer, the reasonableness of an individual officer's prioritization of the many non-emergent tasks assigned to him or her are matters best left to the discretion of jail staff without second-guessing by federal courts.[4] *See Bell v. Wolfish*, 441 U.S. 520, 548 (1979) ("[J]udicial deference [to prison administrators] is accorded not merely because the administrator ordinarily will, as a matter of fact in a particular case, have a better grasp of his domain than the reviewing judge, but also because the operation of our correctional facilities is peculiarly the

---

[4] The Medical Exhibits contain an extensive list of when Hecke did and did not receive ice. The court will not scour through those pages to determine if there are details relevant to this claim.

province of the Legislative and Executive Branches of our Government, not the Judicial.").

Furthermore, it is likely that none of the individual instances of missing ice packs fell within the applicable statute of limitations. Hecke alleges that the doctor's ice therapy order expired on June 30, 2021, (ECF 29 at 28), and Hecke signed his original complaint on June 30, 2023, (ECF 1 at 4). That means that every instance of forgotten ice, except perhaps one, occurred before June 30, 2021, and thus falls outside the two-year statute of limitations applicable to claims under 42 U.S.C. § 1983 in Indiana.[5] *See Snodderly v. R.U.F.F. Drug Enforcement Task Force*, 239 F.3d 892, 894 (7th Cir. 2001). The Medical Exhibits are consistent with this timeline, as Hecke stopped tracking his receipt of ice on May 1, 2021, so there are no instances of forgotten ice alleged within the limitations period. Therefore, Hecke may not proceed against the individual officers on this claim.

### B. Sleeping Arrangements

Hecke seeks to hold Sheriff Gladieux, Commissioner Beck, and Jail Commander Butler individually liable for him having to sleep on the floor because they did not maintain an adequate jail structure to house the inmate population. ECF 29 at 31. However, as discussed above, it does not violate the Constitution for an inmate to sleep on the floor. Furthermore, there are no allegations that any of these defendants were

---

[5] This is not an issue with the official capacity claim because the asserted wrong was the continued overcrowding and understaffing, a violation that existed throughout most if not all of Hecke's detention. *See United States v. Spectrum Brands, Inc.*, 924 F.3d 337, 350–51 (7th Cir. 2019) (noting that a continuing violation occurs when the illegal wrong itself—not the harm it caused—"perdures beyond the initial illegal act" such that it "can be characterized as a continuing wrong").

involved in determining which inmates were assigned to sleep in bunks and which were assigned to sleep on the floor. These high-level officials cannot be held liable for the actions of their subordinates if they did not also have some personal involvement in the alleged violation. *See, e.g., Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018); *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) (liability under 42 U.S.C. § 1983 is based on personal responsibility, and officials cannot be held liable for damages solely because they hold supervisory positions). This claim may not proceed.

### C. Smoke Inhalation

For this next claim, Hecke names as defendants Sheriff Gladieux, Commissioner Beck, Assistant Jail Commander Shawn Sickafoose, Corporal Dunn (as the Block Inspection Supervisor), and whichever ACJ employee was the Cell Block Inspector that 210 IAC 3-1-9(c) mandates jails must have. ECF 29 at 33. He alleges that they each failed to remedy the debris buildup in the ventilation system that allowed for inmates to set fires that spread through the ventilation system. *Id.* at 33-34. This fire hazard, coupled with the lack of sufficient staff to search for contraband, Hecke says is to blame for the fires he experienced.

This claim cannot proceed. First, as discussed above, Hecke has not alleged a sufficient injury from the fires. Second, Hecke does not allege that any fire occurred in the relevant statutory period. The specific fires he identifies happened on July 21, 2020, August 12, 2020, December 7, 2020, December 22, 2020, December 22, 2020, and December 25, 2020—all more than two years before he signed the original complaint on

June 30, 2023. ECF 29 at 38-41. He does not identify an act by any of these defendants within the statutory period.

### D. Water Supply

Hecke seeks to hold Sheriff Gladieux, Commissioner Beck, and Jail Commander Butler liable for the issues he described with the water supply. However, for the same reasons as above, Hecke has not plausibly alleged that the sporadic water shutdowns were of sufficient frequency or duration to deny him reasonable access to water or to expose him to unflushed toilets for an unreasonable period of time.

### E. Lockdowns

Hecke is proceeding against Sheriff Gladieux and Commissioner Beck in their official capacities for the staff's overuse of lockdowns to maintain security at the jail. He seeks to hold eight officers individually liable for their roles in the lockdowns.[6] He alleges that these defendants would lock down the whole cell block for infractions of individual inmates, a security measure he says was "created to deal with the effects of overcrowding and a lack of staff." ECF 29 at 51. Given the overcrowded and understaffed conditions—conditions that these defendants are not responsible for—it is not reasonable to infer that the decision to use lockdowns in this manner was excessive in relation to the legitimate goal of safety and security at the jail.

---

[6] Specifically, (1) Correctional Officer Andrew Chadwell, (2) Correctional Officer Pinnock, (3) Sergeant Wykasi, (4) Corporal Gary M. Apps, (5) Sergeant Scott Sanderson, (6) Disciplinary Officer Penny Lake, (7) Lieutenant Vashon, and (8) J. Wiese. ECF 29 at 49.

**F. Bathroom Access**

Hecke sues eight individual officers who he says denied him reasonable restroom access.[7] ECF 29 at 55. However, as discussed above, he does describe the policy. Hecke relies on a violation of Indiana's Administrative Code, which cannot, by itself, form the basis of a constitutional violation. *See Scott*, 346 F.3d at 760.

Hecke provides specific detail about what happened on June 29, 2021, the day he soiled himself. He alleges he explained to Officer Pinnock, Officer Caccamo, Officer Newsome, and Officer Chadwell that he was suffering from gastrointestinal issues and "needed to use the restroom now." ECF 29 at 57. But he does not explain what restroom restrictions were in place at the time or how the officers responded before he soiled himself. Hecke has not plausibly alleged that these defendants' actions or inaction constituted punishment under the Fourteenth Amendment. Furthermore, this incident happened on June 29, 2021, which falls just outside the two-year statute of limitations.

**G. Conclusion**

None of the individual claims may proceed.

**III. FEDERAL DEFENDANTS**

Finally, Hecke sues U.S. Marshal Mike, U.S. Marshal Eric Anderson, and the U.S. Marshal in charge of federal pretrial detainment, seeking to hold them liable for the

---

[7] These defendants are: (1) Correctional Officer Miller, (2) Correctional Officer Pinnock, (3) Correctional Officer Dominic Caccamo, (4) Corporal Gary M. Apps, (5) Steven Newsome, (6) Corporal Scott Sanderson, and (7) Assistant Jail Commander Shawn Sickafoose. ECF 29 at 54.

conditions he endured at the jail.[8] ECF 29 at 18. In the order remanding this case, the Seventh Circuit briefly addressed the federal defendants, noting that a claim under § 1983 applies to state officials, not federal ones, and the federal counterpart to § 1983, a *Bivens* suit, does not apply to this situation. *See Hecke v. Beck*, No. 24-2909, 2024 WL 5165598, at *4 n.2 (7th Cir. Dec. 19, 2024) (citing *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971)).

Hecke attempts to get around the Seventh Circuit's rejection of his § 1983 claim by arguing that the federal defendants can be held liable under § 1983 because they conspired with state officials to deprive him of his Fourteenth Amendment right not to be housed in unconstitutional conditions of confinement. ECF 29 at 18. "To establish § 1983 liability through a conspiracy theory, a plaintiff must demonstrate that: (1) a state official and private individual(s) reached an understanding to deprive the plaintiff of his constitutional rights, and (2) those individual(s) were willful participant[s] in joint activity with the State or its agents." *Spiegel v. McClintic*, 916 F.3d 611, 616 (7th Cir. 2019) (quotation marks omitted).

To meet this standard, Hecke relies on the federal defendants' alleged knowledge of the unconstitutional conditions at the Allen County Jail. But this alleged knowledge does not allow an inference that the federal defendants were willful participants in the constitutional violations caused by the overcrowding and understaffing. Courts have

---

[8] Any claim against these defendants under § 1983 must be in their individual capacities because a claim for damages against them in their official capacity would be barred by sovereign immunity, unless the federal government has consented to being sued, which it has not. *See Morgan v. Fed. Bureau of Prisons*, 129 F.4th 1043, 1049 (7th Cir. 2025).

consistently held that county sheriffs and jail employees are responsible for the conditions of confinement federal pretrial detainees face when placed in county facilities by federal officials. *See Logue v. United States*, 412 U.S. 521, 529–30 (1973) (noting that federal statute allowing federal officials to contract with county jails to hold federal pretrial detainees "clearly contemplated that the day-to-day operations of the contractor's facilities were to be in the hands of the contractor" and federal officials "had no authority to control the activities of the sheriff's employees"); *Belbachir v. Cnty. of McHenry*, 726 F.3d 975, 978 (7th Cir. 2013) (noting that contract between federal government and county jail did not make the county jail a federal instrumentality); *see also Lopez v. Widup*, No. 2:07-CV-291WL, 2007 WL 3046437, at *5 (N.D. Ind. Oct. 15, 2007) ("The United States Marshal was not responsible for operating the Porter County Jail. Mr. Lopez relies on the doctrine of *respondent superior* to hold the Marshal responsible for actions by jail officials because the jail is holding him for the United States. But the doctrine of *respondent superior,* under which a person may be held liable for his subordinates' actions, has no application to *Biv[e]ns* actions."). Therefore, Hecke's claim of conspiracy fails because there are no allegations that the federal defendants participated in any joint activity with the state agents regarding the care of the inmates. He may not proceed against the federal defendants under § 1983 or *Bivens*.

## IV. CONCLUSION

Hecke will be allowed to proceed against Sheriff Gladieux and Commissioner Beck in their official capacities as described in this order. He is not proceeding in forma pauperis, however. Therefore, the court will not serve the defendants pursuant to 28

U.S.C. § 1915(d). Rather, it is his obligation to serve the defendants with (1) a copy of the complaint, (2) the attached exhibits, and (3) this screening order as provided by Federal Rule of Civil Procedure 4.

For these reasons, the court:

(1) LIFTS the stay;

(2) DIRECTS the clerk to attach to the amended complaint (ECF 29) the following exhibits: Exhibit B (ECF 1-3) as "Lockdown/Fire Exhibits"; Exhibit C (ECF 1-4) as "Medical Exhibits";

(3) GRANTS Steven John Hecke leave to proceed against Sheriff David Gladiuex in his official capacity for compensatory damages for being held in unconstitutionally overcrowded and understaffed conditions, as identified in *Morris*, from January 13, 2020, through April 19, 2022, resulting in a denial of ice treatment for an injury in violation of the Fourteenth Amendment;

(4) GRANTS Steven John Hecke leave to proceed against Commissioner David Beck and Sheriff David Gladieux in their official capacities for compensatory damages for being held in unconstitutionally overcrowded conditions, as identified in *Morris*, from January 13, 2020, through April 19, 2022, resulting in the overuse of lockdowns, keeping him unreasonably confined in a small space without enough room to exercise or move around in, in violation of the Fourteenth Amendment;

(5) DISMISSES all other claims;

(6) DISMISSES David Butler, Mike, Eric Anderson, U.S. Marshal, Vashon, Pinnock, Andrew Chadwell, Wykasi, Scott Sanderson, Gary M Apps, Penny Lake, J.

Wiese, Baldwin, King, Birgette, Schram, Finely, Arnold, Brenneman, Betty, Gore, Fries,

Wright, Toledo, Lemons, Adams, England, Rhinehart, Goodman, Shawn Sickafoose,

Dunn, Miller, Dominic Caccamo, Steven Newsome, Designated ACJ Cell Block

Inspector;

(7) DIRECTS the clerk to sign and seal summons for Commissioner Richard Beck

and Sheriff David Gladieux, in their official capacities, and send them to Steven John

Hecke; and

(8) ORDERS, under 42 U.S.C. § 1997e(g)(2), Commissioner Richard Beck and

Sheriff David Gladieux, in their official capacities, to respond, as provided for in the

Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which

the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on June 6, 2025

/s/Gretchen S. Lund
JUDGE
UNITED STATES DISTRICT COURT